BAKER, Judge,
with whom STUCKY, Judge, joins (dissenting as to Part A and concurring in the result):

Introduction

This case raises two constitutional questions regarding the affirmative defense of consent in the context of aggravated sexual assault under Article 120(e)(2), Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 920 (2006). First, in light of a statutory scheme where an element of the government’s case is “[t]hat the other person was substantially incapacitated,” and the affirmative defense is defined in a way that requires the accused to prove capacity to consent: does the statutory requirement that the accused prove the affirmative defense by a preponderance of the evidence unconstitutionally shift the burden of proof to the accused to disprove an essential element of the Government’s ease?
The majority concludes that:
If an accused proves that the victim consented, he has necessarily proven that the victim had the capacity to consent, which logically results in the accused having dis-proven an element of the offense of aggravated assault ... an affirmative defense may not shift the burden of disproving any element of the offense to the defense. Thus, the interplay of [the] sections ... results in an unconstitutional burden shift to the accused.
United States v. Prather, 69 M.J. at 343 (C.A.A.F.2011) (citations omitted). The problem with this analysis is that there is a difference between negating an element and shifting the burden of proof to the accused. If the government retains the burden to prove each element of the offense, regardless of whether the accused demonstrates an affirmative defense, then the burden of proof does not in fact shift to the accused as the majority contends. By definition, an affirmative defense negates one’s culpability.
The constitutional problem arises when the law not only establishes a defense requiring an accused to disprove an element of the offense, but then also relieves the government of its duty to independently prove that element if the defense falls short. That is not what happened in this case. Article 120(t)(14), UCMJ, does not relieve the Government of proving each element of the offense, and the military judge in this case specifically instructed the members that the burden remained with the Government regardless of what Appellant demonstrated or failed to demonstrate.
Therefore, because I read the relevant Supreme Court precedents differently than the majority, I respectfully dissent from its conclusion that this statutory scheme has resulted in an unconstitutional burden shift to the accused to disprove an element of the Government’s case notwithstanding the fact that the members were properly and adequately instructed to the contrary.
In addition to reaching what I believe is the wrong conclusion regarding the affirmative defense, the majority has taken an erroneous path to that conclusion. First, the majority does not indicate why United States v. Neal, 68 M.J. 289 (C.A.A.F.2010), does not fit within the analysis now presented in this case. In Neal, just as in this ease, the defense at issue negated an element of the offense.
More importantly, the majority determines that the military judge’s instructions were insufficient to resolve the constitutional issue presented. However, the majority does not indicate what instructions would have cured the asserted problem. Indeed, the majority “does not believe that any instruction could have cured the error where the members already had been instructed in a manner consistent with the text of Article 120.” But *348 neither does the majority indicate that the affirmative defense is unconstitutional on its face or that the statutory language establishing the offense is unconstitutional on its face. Thus, practitioners are without guidance as to how to apply Article 120(e)(2), UCMJ, and the affirmative defense contained in Article 120(t)(16), UCMJ, in the future. That leaves the accused and the government past, present, and future in legal limbo.
The second question in this case asks whether Article 120(t)(16), UCMJ, violates a military accused’s due process right by shifting the burden back to the government to disprove the defense of consent beyond a reasonable doubt after the defense has proven the affirmative defense by a preponderance of the evidence. Restated, if a preponderance of the evidence necessarily raises a reasonable doubt, as a matter of due process can the government logically prove its case beyond a reasonable doubt once the affirmative defense is proved? Here, I agree with the majority that the burden shifting creates a legal impossibility. However, there is another word for what the statute does here and that is “unconstitutional.” On this question of law, the Court should not shy away from stating so.
In summary, for the reasons stated below, I conclude that the statutory language contained in Article 120(t)(16), UCMJ, assigning to the accused the burden of proving the affirmative defense is not unconstitutional on its face, and when properly instructed upon, can be applied in a constitutional manner. However, with respect to the second burden shift contained in Article 120(t)(16), UCMJ, purporting to shift the burden back to the government once the affirmative defenses at issue are proved by a preponderance, I conclude that provision is unconstitutional on its face.

Discussion

A. Articles 120(c)(2), (t)(H), and (t)(16), UCMJ: The First Burden Shift Requiring the Accused to Prove the Affirmative Defense of Consent
Before this Court, Appellant raises facial and as applied constitutional challenges to the offense of aggravated sexual assault under Article 120(c)(2), UCMJ. In particular, Appellant challenges application of the affirmative defense of consent in the context of this offense.
According to Appellant and the majority, an accused cannot prove the affirmative defense by a preponderance of the evidence without also disproving the second element of the offense of aggravated sexual assault. Leland v. Oregon, 343 U.S. 790, 72 S.Ct. 1002, 96 L.Ed. 1302 (1952), among other eases, stands for the proposition that placing the burden on an accused to prove an affirmative defense is not, in and of itself, unconstitutional. Id. at 799, 72 S.Ct. 1002 (“We are therefore reluctant to interfere with [the State’s] determination of its policy with respect to the burden of proof on the issue of sanity since we cannot say that policy violates generally accepted concepts of basic standards of justice.”).
While we are asked to interpret a provision of the UCMJ, the constitutional question of law, hinges on interpretation of a handful of Supreme Court cases addressing affirmative defenses as well as the burden of proof. Over the years, the Supreme Court has wrestled with this issue. Dixon v. United States, 548 U.S. 1, 126 S.Ct. 2437, 165 L.Ed.2d 299 (2006); Martin v. Ohio, 480 U.S. 228, 107 S.Ct. 1098, 94 L.Ed.2d 267 (1987); Patterson v. New York, 432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977); Mullaney v. Wilbur, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975); Leland, 343 U.S. 790, 72 S.Ct. 1002, 96 L.Ed. 1302. As the division on this Court in Neal suggests, the ease law distinguishing between that which offends due process and that which does not is opaque. In Patterson, 432 U.S. at 207, 97 S.Ct. 2319, where the Supreme Court found no unconstitutional shifting of the burden to the defendant, the Court concluded that the statutory affirmative defense at issue “does not serve to negative any facts of the crime which the State is to prove in order to convict of murder.” In Martin, the Court considered a state law providing an affirmative defense of self-defense to murder, which the defendant was required to prove. 480 U.S. at 230, 107 S.Ct. 1098. The Court concluded that “evidence *349 offered to support the defense may negate a purposeful lulling by prior calculation and design, but [the State] does not shift to the defendant the burden of disproving any element of the state’s ease.” Id. at 234, 107 S.Ct. 1098. In reaching this conclusion, the Court also noted that the instructions “are adequate to convey to the jury that all of the evidence, including the evidence going to self-defense, must be considered in deciding whether there was a reasonable doubt about the sufficiency of the State’s proof of the elements of the crime.” Id.
It is also settled that a statute may “not shift to the defendant the burden of disproving any element of the [prosecution’s] case.” Id. In Mullaney, for example, the Court concluded that the state murder statute at issue required the defendant “to carry the burden of proving a fact so critical to criminal culpability” as to create an unconstitutional burden shift to the defendant. 421 U.S. at 702, 95 S.Ct. 1881. In particular, the state statute there defined murder as the unlawful killing of a human being “with malice aforethought, either express or implied.” Id. at 686, 95 S.Ct. 1881. Malice, the Court concluded, was an element of the offense without which a charge of murder would be reduced to manslaughter. Id. Based on the statutory language, state law at the time required that the jury be instructed that if the prosecution established that the homicide was both intentional and unlawful, “malice aforethought was to be conclusively implied unless the defendant proved by a fair preponderance of the evidence that he acted in the heat of passion on sudden provocation.” Id. (emphasis added). The problem, the Court concluded, was that the statutory language allowed a presumption on an element of the crime of murder under the statute, i.e., malice aforethought. Thus, the statute both relieved the prosecution of any duty to produce any evidence on this element, and at the same time, imposed the burden on the accused to disprove it by a fair preponderance since sudden provocation was the converse of malice aforethought. Id. at 687, 95 S.Ct. 1881. That is a burden shift. As the Court in Patterson later summarized the holding in Mullaney: “[A] State must prove every ingredient of an offense beyond a reasonable doubt, and ... it may not shift the burden of proof to the defendant by presuming that ingredient upon proof of the other elements of the offense.” 432 U.S. at 215, 97 S.Ct. 2319 (emphasis added).
As I read these cases several principles are evident. First, the burden to prove the elements of an offense must always remain with the prosecution. Second, a statute may not presume that an element of the offense is met in the absence of the accused disproving that element by carrying his burden on an affirmative defense. Finally:
[a]n overlap between the evidence pertinent to the affirmative defense and evidence negating the prosecution’s case does not violate the Due Process Clause when instructions “convey to the jury that all of the evidence, including the evidence going to [the affirmative defense], must be considered in deciding whether there was a reasonable doubt about the sufficiency of the State’s proof of the elements of the crime.”
Neal, 68 M.J. at 299. This last principle applies whether or not the defense carries its burden to prove the defense or merely provides some evidence warranting instruction on the defense. It is this last principle that is most evident in the case before us and which is not distinguished by the majority in a meaningful manner since the analysis presented would apply to both this case and Neal.
The offense at issue here, aggravated sexual assault under Article 120(c)(2), UCMJ, does not expressly include lack of consent as an element. In fact, Congress expressly excluded consent as an issue (or element) of the government’s case. “Consent and mistake of fact as to consent are not an issue or an affirmative defense in a prosecution under any other subsection, except they are an affirmative defense for the sexual conduct in issue ... under ... subsection (c) (aggravated sexual assault).... ” Article 120(r), UCMJ. Although Article 120(t)(16), UCMJ, describes an affirmative defense as one in which the accused need not deny commission of “the objective acts, constituting the offense *350 charged,” it does not require him to admit criminal responsibility for those acts, which could create a presumption of guilt similar to the situation encountered in Mullaney. That is to say, although Appellant was free to admit the act of sexual conduct, and did so, he was not required to admit that the victim was “substantially incapacitated.” Further, Articles 120(c)(2), t(14), and t(16), UCMJ, do not indicate expressly or otherwise that evidence of consent cannot be considered on the government’s ultimate burden to prove guilt beyond a reasonable doubt. For these reasons, the statutory scheme at issue here does not, on its face, create any presumption that burdens the accused with disproving an element of Article 120(c)(2), UCMJ.
In Neal, evidence of the element of force and the defense of consent overlapped but ultimately addressed distinct facts and conduct.[1] In contrast, the element of substantial incapacity and the definition of consent arguably present two sides of the same coin. On the facts of this case, Appellant could not prove consent without also proving a capacity to consent on the part of the victim. After all, Article 120(t)(14), UCMJ, states, “A person cannot consent to sexual activity if ... substantially incapable of ... appraising the nature of the sexual conduct at issue due to ... mental impairment or unconsciousness resulting from consumption of alcohol.[2]
The constitutional risks, then, are twofold. First, the members might assume that if the accused tries, but fails, to offer some evidence of consent or fails to establish the affirmative defense by a preponderance of the evidence, the government will have necessarily met its burden of persuasion on the element beyond a reasonable doubt. Second, and related, the members may treat the ae-cused’s evidence of consent as bearing only on the question of the affirmative defense and not also as evidence that may independently bear on whether the government has met its ultimate burden beyond a reasonable doubt. However, the statutory text itself does not compel either of these results. The scheme does raise the risk that the members will do so absent instructions that carefully guide them past the three principles identified above.
The majority points to the fact that the military judge instructed the members that they “may” consider the evidence of the affirmative defense, as opposed to “must,” if they found it relevant “to [their] consideration” as to whether the Government had proven the elements of the offense beyond a reasonable doubt. To the extent this language in the instruction can be read to imply that such consideration is optional, then it would fall short of Martin’s direction that the instructions “convey to the jury that all of the evidence, including the evidence going to [the affirmative defense], must be considered in deciding whether there was a reasonable doubt about the sufficiency of the [prosecution’s] proof of the elements of the crime.” Martin, 480 U.S. at 232-36, 107 S.Ct. 1098. On the other hand, to the extent it is read to imply that the members must consider all the evidence presented, but may assign to it whatever weight they deem appropriate, then it is constitutionally sound. A clearer instruction on this point might have advised the members to simply consider all the evidence presented in determining whether the prosecution has proven the elements of the offense beyond a reasonable doubt. Additionally, the members could be instructed *351 that they may determine what weight, if any, to assign to the evidence.
In this ease, with respect to Appellant’s burden to prove the affirmative defense of consent, the military judge instructed the members consistent with the statute. As a result, the constitutional principles embedded in the Mullaney line of eases were implicated. Here, the military judge’s instructions addressed these concerns. As the majority correctly points out, during the preliminary instructions, the military judge advised the members that “The Government has the burden of proving the accused’s guilt by legal and competent evidence beyond a reasonable doubt.” He also reminded them that this burden never shifts to the accused. It, therefore, remains unclear why these “standard ultimate burden instructions” were inadequate, unless the provisions are unconstitutional on their face. As in Neal, whether or not the statutory provisions at issue are unconstitutional as applied in a given case will depend on the instructions given, or perhaps more to the point, not given.
B. Article 120(t)(16), UCMJ: The Second Burden Shift Back to the Government to Disprove the Affirmative Defense
Article 120(t)(16), UCMJ, assigns the burden of proof for the affirmative defense to the accused. It then states, “After the defense meets this burden, the prosecution shall have the burden of proving beyond a reasonable doubt that the affirmative defense did not exist.” I agree with the majority’s characterization of this second burden shift as a legal impossibility. That said, I conclude that it presents a due process violation and is thus, unconstitutional on its face.
The problem is in the structure of the statute. If the defense meets its burden of proof, that it is more likely than not that the victim has consented, then it necessarily rebuts the prosecution’s effort to meet its burden, thereby excusing the accused from criminal liability. By definition, the government will not have persuaded the members of the accused’s guilt beyond a reasonable doubt, at which point they should reach a finding of not guilty. At this point, the relationship between the definition of consent and the element of substantial incapacity could work in the appellant’s constitutional favor.
However this second burden shift back to the government, in effect, serves as an unauthorized reconsideration of a finding of not guilty.[3] Alternatively, it raises the prospect that the members will convict an accused on the basis of something less than evidence beyond a reasonable doubt. In either ease the effect is constitutionally flawed. The point is illustrated by comparison to the procedure set forth in R.C.M. 921(c)(4) regarding the affirmative defense of lack of mental responsibility:
When the defense of lack of mental responsibility is in issue ..., the members shall first vote on whether the prosecution has proven the elements of the offense beyond a reasonable doubt. If at least two-thirds of the members present ... vote for a finding of guilty, then the members shall vote on whether the accused has proven lack of mental responsibility. If a majority of members present concur that the accused has proven lack of mental responsibility by clear and convincing evidence, a finding of not guilty only by reason of lack of mental responsibility results.
Emphasis added. In contrast, Article 120(t)(16), UCMJ, of Article 120, UCMJ, contains no such language; nor does it compel instructions to the members on how to deal with the competing burdens of persuasion. Moreover, Article 120(t)(16), UCMJ, includes a second shift to the prosecution allowing it to disprove the defense whereas R.C.M. 921 does not. Neither Article 120(t)(16), UCMJ, nor the MCM (2008 ed.), provide any guidance as to how the members could navigate between these competing burdens of persuasion. I have serious doubt that the members here could have understood and addressed *352 the shifting burdens of persuasion without further clarifying instructions consistent with the constitutional principles highlighted above. Thus, this section is unenforceable, and if literally followed, is unconstitutional.[4]

Conclusion

Court-martial members may not presume that the Government has met an element of the offense on account of an accused’s failure to prove a defense. All evidence, including evidence addressed to an affirmative defense, must be considered in deciding whether the government has met its burden of proving each element of the offense beyond a reasonable doubt, whether or not the accused is successful in proving his defense. Finally, and related, the prosecution alone bears the burden to prove each element of the offense beyond a reasonable doubt, and that burden may never move to the accused.
Thus, for the reasons stated I dissent from the conclusion reached in Part A of the Court’s opinion. However, since I would reverse because of the due process problem identified above, I concur in the result reached.

. In Neal, we distinguished between (1) a fact on which the defense bears the burden of persuasion (consent) and (2) a matter that is subsidiary to a fact on which the prosecution bears the burden of persuasion (force). 68 M.J. at 299. It would seem that a military judge, aware of this distinction, could craft an instruction obviating the concern by informing the members that evidence of consent may be relevant to their determination of whether the prosecution has proven the required elements of the offense beyond a reasonable doubt. Id. Such an instruction was given in this case.

. In a sense, the situation is not that different than what one encounters with respect to the issue of sanity and the affirmative defense of lack of mental responsibility. It might be argued in a given case that insanity and intent are also two sides of the same coin. However, it is clear that the affirmative defense at issue there does not result in an impermissible shift to the accused that relieves the government of its burden to prove the element of intent.

. The Manual for Courts-Martial {MCM), of course, has a process for reconsideration of members’ findings of not guilty while the members are still in deliberations. Rule for Courts-Martial (R.C.M.) 924 states, "Any finding of not guilty shall be reconsidered if a majority [of the members] vote for reconsideration.”

. However, I would also not recommend adopting the approach taken in the current version of the Military Judges’ Benchbook that places the burden on the Government to disprove the affirmative defense if some evidence raises the defense. Dep’t of the Army, Pam. 27-9, Legal Services, Military Judges' Benchbook ch. 3, para. 3-45-5, Note 9 (2010). Such an approach, although helpful, clearly contravenes the statute.